UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLEAN ENERGY EXPERTS

        *Plaintiff*,

v.

NICK BENHAMMOU and DANIEL YOMTOBIAN,

        *Defendant.*

CIVIL ACTION NO.: 23-1940

---

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT NICK BENHAMMOU'S MOTION TO DISMISS

Gordon Rees Scully Mansukhani, LLP

By: _____

Brendan T. Mahoney, Esq
One Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (860) 494-7489
bmahoney@grsm.com
*Attorneys for Plaintiff*
CLEAN ENERGY EXPERTS

Dated: New York, New York
      September 11, 2023

## PRELIMINARY STATEMENT

Plaintiff submits the instant Memorandum of Law in opposition to Defendant Benhammou's Amended Motion to Dismiss. The Court should deny the instant motion because (1) Defendant Benhammou waived his right to the benefits contained in underlying contracts' arbitration clause by his own actions with regard to the previously demanded arbitration in this dispute, and (2) Plaintiff's causes of action for conversion, fraud, and misrepresentation against Defendant Benhammou are claims upon which relief may be granted, as they allege business torts with specific reference to the individual Defendants' unlawful actions, which occurred in the context of but necessarily outside the bounds of the underlying contracts at issue.

Plaintiff Clean Energy Experts (CEE) brought this action on March 9, 2023, alleging causes of action for conversion, fraud, and misrepresentation against Defendants Nick Benhammou and Daniel Yomtobian. *See*, ECF # 2. This action arises from repeated fraudulent charge backs beginning in June 2022 and made from the Defendants' accounts against sales lead fees that CEE assessed. Plaintiff alleges economic damages in excess of $250,000.00.

Defendant Benhammou's position on arbitration in this matter is now totally contradictory, and has created confusion and delay in resolving this dispute. Specifically and as set forth in the accompanying Declaration of Counsel in Opposition to the Motion to Dismiss ("Mahoney Declaration"), in late 2022 Plaintiff initially sought to arbitrate all claims in this matter including those personally against Defendants Benhammou and Yomtobian. Only after Defendants Yomtobian and Benhammou advised that they would refuse to participate in the arbitration, did Plaintiff file the instant action. Maddeningly, Defendant Benhammou now argues in the instant Motion to Dismiss that arbitration is the proper forum for this dispute. Plaintiff is entitled to some forum in which to bring these claims, and believes when it filed the instant action that Defendants

would at least accept the court's jurisdiction over these claims based on Defendants own prior representations and conduct with regard to the arbitration. Defendant Benhammou's novel, and now contradictory position on the arbitration first asserted in the Motion to Dismiss threatens to hold Plaintiff's claims in limbo and deny Plaintiff any forum at all in which to bring these claims.

Further, Plaintiff's Complaint does in fact set forth causes of action upon which this Court may grant relief. Indeed, and as set forth below, it is permissible and common to being causes in tort personally against parties who acted unlawfully under color of their corporate authority, if such unlawful actions constitute breach of a duty independent of the breach of contract. Indeed, the existence of corporate entity liability limitation does not protect a party, such as Defendants herein, from the consequences of their own unlawful actions, including those involving conversion, fraud, and intentional misrepresentation.

## STATEMENT OF FACTS

As set forth in full detail in the Complaint this action arises from Defendants' misrepresentations made to their merchant services provider American Express, which caused American Express to charge back sales lead fees rightfully due and owing to Plaintiff CEE. This course of action resulted in a loss of over $250,000.00 to CEE. *See*, ECF # 2, at ¶ 26-33, 55 and 56.

Defendant's own conduct waived his right to now demand these claims be heard in arbitration. Contracts between Plaintiff and an entity known as Group Solar and between Plaintiff and an entity known as Solar Program underlie this dispute, and both contracts contain arbitration clauses mandating that disputes be brought before JAMS in Los Angeles County, CA, choice of law clauses favoring application of California law. *See*, Mahoney Declaration ¶ 4 and ECF # 2, Exhibits C and D, Section 10 in both Exhibits. Plaintiff believes that Group Solar and Solar Program are closely held entities at one time and possibly presently controlled by defendants, and

3

believes that neither entity is any longer a going business concern with assets or the ability to satisfy a judgment.

On December 22, 2022, Plaintiff non-party Sunrun Inc., the owner of the Plaintiff, submitted a Demand for Arbitration against Respondents Nick Benhammou, Group Solar USA, Daniel Yomtobian, and Solar Program, and JAMS assigned said matter Reference No. 5240000442. *See*, Mahoney Declaration, ¶ 6. In response, on January 4, 2023 Defendant Yomtobian through counsel filed an action against Sunrun, Inc. and Clean Energy Experts, LLC in the Supreme Court of the State of New York, County of Nassau, bearing Index No. 600187/2023. The relief sought in that Nassau County action was a permanent stay of the arbitration proceedings as against Defendants personally. *See*, Mahoney Declaration, ¶ 7. Counsel to Defendant Benhammou was aware of the December, 2022 Demand for Arbitration, and part of the discussions concerning CEE's attempt to resolve these claims in that forum. *See*, Mahoney Declaration, ¶ 8. As a result of conversations with counsel to both Defendants and the above-mentioned Nassau County action, Defendants clearly stated that they would refuse to participate in the arbitration. Accordingly, on January 20, 2023 Plaintiff amended its Demand for Arbitration to name as Respondents Group Solar LLC and Solar Program only, and brought this action on March 9, 2023, alleging causes of action against Defendants for conversion, fraud, and misrepresentation. *See*, Mahoney Declaration, ¶ 11, and ECF # 2, at p. 9, 10, and 12.

Further, and as set forth below, it is black letter law that these claims asserted for conversion, fraud, and intentional misrepresentation are individual claims, specifically being intentional torts that do not require a contract to proceed and which may be brought despite occurring in the context of a contract breach. These claims asserted have a sound basis and developed foundation in the factual record which presently exists. Specifically, Plaintiff's

4

Complaint annexed documents containing factual evidence tending to confirm that there was no legitimate reason for these chargebacks. *See*, ECF # 2, at ¶ 36. In that regard, Defendant Benhammou stated that payment for the chargebacks would be taken care of, and that "[y]ou guys deliver the leads so it shouldn't be any charge back anyway" (sic). *See id.* From this factual record, it appears that Defendants were making false representations to their merchant services provider to obtain charge backs for the leads that CEE was providing. See, ECF #2, at ¶¶ 36, 38, and 39.

## ARGUMENT

1. **Defendants, by their own conduct, waived any right they may have once had to enforce the arbitration clause contained in the contract at issue**

Defendant Benhammou, in his Motion to Dismiss, argues that the dispute at issue is subject to arbitration by prior agreement of the parties. Plaintiff does not dispute this position, and indeed that is precisely the reason that Plaintiff attempted to arbitrate this matter against all parties including the two Defendants named herein personally in late 2022. Defendants Benhammou and Yomtobian in their personal capacity, however, refused to participate in that arbitration, never appearing in that action while representing through counsel that they would not appear, which led this dispute to the Southern District. In an attempt to escape a determination of these issues on the merits, or for other reasons known unto movant, Mr. Benhammou now seeks to enforce the arbitration clauses at issue. Benhammou's contradictory position regarding the arbitration has only served to confuse resolution of this matter. Frankly, Plaintiff is only seeking a forum, and any competent forum, in which to bring its claims, whether that be arbitration or a litigation at law.

Therefore, Plaintiff does not dispute that the arbitration clause if *prima facie* valid, nor is Plaintiff taking the position that it applies only to Group Solar USA and Solar Program and not to Defendants Benhammou and Yomtobian personally as closely related non-signatories. As set forth

5

herein, and as the evidence annexed to the Mahoney Declaration establishes, Plaintiff sought relief against movant at arbitration only to be frustrated in that course; as an alternative, Plaintiff felt compelled to file the instant action.

Indeed, the record indicates that Defendant Benhammou waived his rights under the binding arbitration clause in the relevant contracts by his actions in the prior attempted arbitration in this matter. As set forth in the Mahoney Declaration, Defendant Benhammou refused to participate in the arbitration which Plaintiff previously sought, despite having had the opportunity to participate in the arbitration demanded by CEE.[1] New York Courts have found that "so long as the defendant's actions are consistent with an assertion of the right to arbitrate, there is no waiver." *See, De Sapio v. Kohlmeyer*, 35 N.Y.2d 402, 405, 321 N.E.2d 770, 772 (1974). In this case, Movant refused to participate in the arbitration; his conduct could not be more inconsistent with the assertion of his right to arbitrate. Indeed, courts have found that acting in a manner inconsistent with the right to arbitrate will constitute a waiver of the right to arbitrate. *See, Estate of Castellone v. JP Morgan Bank, N.A.*, 575 N.Y.S.2d 130 (2009) ("A defendant in an action who has the right to arbitrate a claim may indeed forfeit or waive that right by acts inconsistent with the intention to arbitrate"). In this case, Plaintiff demanded arbitration against, *inter alia*, Defendant Benhammou, who refused to participate in the arbitration. Such conduct could not be more inconsistent with the right to arbitrate.

The doctrine against inconsistent outcomes also bars dismissal of the case against in favor of arbitration against Defendant Benhammou only. It is axiomatic that a civil litigation and an arbitration proceeding bearing on the same dispute should not proceed concurrently, as doing so would present a risk of inconsistent outcomes. *See, Fedele v. Ackerman*, 799 N.Y.S.2d 448 (2005)

---

[1] The arbitration matter remains open, and Plaintiff would welcome a chance to bring its claims in that forum.

("Given that many of plaintiff's claims herein for breach of the shareholders' agreement, which does not have an arbitration clause, are inextricably related to plaintiff's employment agreement, which does have a broad arbitration clause, the motion court should have stayed this action pending the outcome of the pending arbitration so as to avoid the possibility of inconsistent findings related to the termination of plaintiff's employment."). Plaintiff has honored this principle by allowing the JAMS arbitration to remain open but dormant while it pursues this civil litigation, which litigation Plaintiff felt forced to commence in reaction to Defendants' refusal to participate in the arbitration. Movant now seeks to invite the court with his own contradictory position regarding the arbitration to create exactly such a situation that would allow inconsistent outcomes.

2. **Plaintiff's may sue Defendant Benhammou for conversion, fraud, and misrepresentation, as Plaintiff has alleged that Defendants breached a duty independent of those imposed by the contract and corporate entity liability limitation does not protect corporate officers personally for business torts that commit which necessary occur outside the bounds of a contract**

Plaintiff agrees that an action for conversion may not lie for mere non-performance of a contract. Such a bare allegation, however, has not been made in this case. Plaintiff has pled specific facts concerning Defendant's unlawful conduct, which conduct was totally outside the bounds of the contracts at issue, and which conduct supports claims against Defendants for conversion, fraud, and intentional misrepresentation. In that regard, the *Kubin* case supports Plaintiff's position. *See, Kubin v. Miller,* 801 F. Supp. 1101, 1118 (S.D.N.Y. 1992), *citing, Matzan v. Eastman Kodak Company,* 134 A.D.2d 863 (4th Dept. 1987). Specifically, *Kubin* states that an action for conversion may not lie for simple nonperformance under an alleged agreement <u>unless</u> the plaintiff sets forth additional allegations of wrongdoing. Id. In *Kubin*, the court found that Plaintiff's conversion claim <u>was</u> independent of his contract claim, in that Plaintiff alleged that

"the defendant has diverted and continues to divert business, assets, and profits from CMI to himself and to other entities he owns or controls. This allegation is distinct from Kubin's contention that defendant failed to perform the alleged agreements." Id.

*Burlew* similarly supports Plaintiff's position, albeit by implication. In that case the court found that Plaintiff alleged no additional breach of duty separate from breach of contract, and therefore found there was no independent tort action. *Burlew v American Mut. Ins. Co.*, 99 A.D.2d 11, 16, *aff'd*, 63 N.Y.2d 412 (1984) (The cause of action in Burlew charges the defendant with a failure to perform its obligation (authorizing and approving necessary surgery in a timely fashion) under its insurance contract. Here, there is no allegation of a breach of duty separate from a breach of contract and no tort cause of action is stated.").

In contrast to *Burlew*, Plaintiff in this case did allege additional wrongful acts on the part of Defendants to support its causes of action for torts ancillary to but independent of the contracts at issue. The gravamen of Plaintiff's complaint is that Defendants themselves made intentional misrepresentations to non-party American Express, with the intent of causing American Express to charge back Plaintiff's account for funds lawfully owed Plaintiff. These misrepresentations of course occurred outside the scope of the contracts at issue, and form a very simple foundation for Plaintiff's allegations of conversion, fraud, and intentional misrepresentation. Just as Defendant Benhammou's Motion ignores his prior refusal to participate in the arbitration, so too does it ignore Plaintiff's allegations of additional wrongdoing beyond mere breach of contract in an attempt to confuse the issues before the court.

Defendant's citation to *Khodeir* and *PetEdge, Inc.* similarly miss the mark, in that those cases also dealt with a situation where Plaintiff was attempting to turn a mere breach of contract into an independent tort. *See, Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017) ("Under

New York law a fraud claim may be maintained alongside a breach of contract claim only if the claimant (i) demonstrates a legal duty separate from the duty to perform under the contract; or (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages."). *Id.* at 202-203, *citing, Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), *and PetEdge, Inc. v. Garg,* 234 F.Supp.3d 477, 92 (S.D.N.Y. 2017) (false statements concerning intent to perform under a contract do not support an independent claim for fraud, even if breach of contract is not alleged).

In this case, but for Defendants' unlawful misrepresentations made to American Express and Plaintiff concerning the charge backs, Plaintiff would have no independent cause of action against Defendants personally. But it is exactly this course of unlawful conduct, which conduct absolutely had to occur outside the bounds of the parties' contractual relationship but concededly in the context of such relationship, that caused Plaintiff damages and entitles Plaintiff to bring its causes of action against Defendants. In plain terms, Defendants unlawfully lied to American Express and Plaintiff concerning the basis for a nature of the charge backs at issue, and these lies caused Plaintiff damages.

New York case law analyzing instances where such independent allegations of unlawful conduct are made in addition to mere breach of contract supports Plaintiff's position. Indeed, business torts such as fraud, intentional misrepresentation, and conversion, moreover, often arise in conjunction with a breach of contract, but those torts alone may be alternative causes of action. For example, in *North Shore Architectural Stone, Inc. v. American Art is in Construction, Inc.*, the Appellate Division Second Department found that the corporate officer of a limestone company knowingly lied about the delivery of a product to a party to induce the plaintiff to pay for the

9

product before it had been delivered. 61 N.Y.S.3d 627 (2017 N.Y. App. Div. 2d). The court found that the case before it involved more than a mere breach of contract for failing to deliver a product on time, and held in that case that the defendant personally participated in making the misrepresentation on behalf of the corporation and therefore could not avoid liability simply because he was doing this in his capacity as a corporate officer. *Id.* at 629. The Second Department in *North Shore* was clear in finding that while Defendant's alleged conduct may have been committed "on behalf of the corporation in the course of official duties", it did not prevent liability from being imposed upon him. *Id., citing Rajeev Sindhwani, M.D., PLLC v Coe Bus. Serv., Inc.*, 52 AD3d at 677; s*ee PDK Labs, Inc. v G.M.G. Trans W. Corp.*, 101 AD3d at 973; *Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 116 [2009]; *Aguirre v Paul*, 54 AD3d 302 [2008]; *Greenway Plaza Off. Park-1 v Metro Constr. Servs.*, 4 AD3d at 329-330). "Corporate officers or agents are personally liable for those torts they personally commit, or which they inspire or participate in, even though performed by an artificial body." *Michaels v. Lispenard Holding Corp.*, 11 A.D.2d 12, 201 N.Y.S.2d 611 (1960).

## CONCLUSION

Plaintiff filed the instant action in an attempt to bring this dispute in a forum in which defendants would willingly litigate. The instant motion seeks to punish Plaintiff for those efforts. The arbitration action remains open, and Plaintiff merely seeks to bring these claims in some forum that all parties will agree to adjudicate their dispute. Defendant Benhammou's arguments concerning the arbitration clause contradict his prior position, and only serve to frustrate the efficient administration of justice in this dispute. Further, Defendant Benhammou's arguments that Plaintiff is shoehorning a mere breach of contract into this action alleging conversion, fraud, and intentional misrepresentation ignore the plain language of the Complaint. It is respectfully submitted that the instant motion should be denied.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 11, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which served a copy of the foregoing on all counsel of record.

*s/ Brendan T. Mahoney*

Gordon Rees Scully Mansukhani, LLP

By: _____

Brendan T. Mahoney, Esq
One Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (860) 494-7489
bmahoney@grsm.com
*Attorneys for Plaintiff*
CLEAN ENERGY EXPERTS

Dated: New York, New York
September 11, 2023