CLEAN ENERGY EXPERTS      :

                        :

           *Plaintiff,*   :

                        :

v.                         :

                        :

NICK BENHAMMOU and DANIEL     :
YOMTOBIAN,

                        :

          *Defendants.* :

CIVIL ACTION NO.: 23-1940

 

# MEMORANDUM OF LAW IN OPPOSITION OF
## DEFENDANT DANIEL YOMTOBIAN'S MOTION TO DISMISS

 

Gordon Rees Scully Mansukhani, LLP

By: _____

Brendan T. Mahoney, Esq
One Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (860) 494-7489
bmahoney@grsm.com
***Attorneys for Plaintiff***
CLEAN ENERGY EXPERTS

Dated: New York, New York
       October 20, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................3

PRELIMINARY STATEMENT/STATEMENT OF FACTS ........................................................5

ARGUMENT ...................................................................................................................8

1.   The Motion to Dismiss Standard disfavors granting Defendant Yomtobian's Motion, especially given that fraud is alleged and in such cases Courts greatly disfavor the granting of such motions before discovery. ................................................................................... 8

2.   It is permissible and common for personal business tort claims to arise in the context of a contract with a corporate entity, and Plaintiff is entitled to bring such claims in this case.............. 9

3.   Plaintiff is entitled pierce the corporate veil in this case, involving Defendants' closely held entities that Defendants used to effectuate their fraudulent scheme, and at a minimum Plaintiff is entitled to proceed with discovery in the case at bar .................................................................11

4.   Plaintiff has plead particular facts, so far uncontroverted, regarding Defendants' acts in furtherance of the alleged fraud, conversion, and intentional misrepresentation, entitling proceed with this litigation. ................................................................................................... 12

5.   Plaintiff's fraud claim is viable given that Defendants breached a duty to defendant extraneous to the Contract, made fraudulent misrepresentations, including of present facts, to Plaintiff and non-party American Express collateral and extraneous to the Contracts at issue, and in so making such misrepresentations along with unlawfully rendering the corporate entities insolvent caused Plaintiff special damages unrecoverable as contract damages ...........................14

6.   Plaintiff's claims for conversion and intentional misrepresentation must also stand, as they are based on Defendants' intentional, tortious conduct which is necessarily extra-contractual, causing Plaintiff damages which Plaintiff would not have suffered if there had merely been a breach of the Lead Sales Agreements at issue...........................................................................17

CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*245 E. 19 Realty LLC v. 245 E. 19th St. Parking LLC*, 194 N.Y.S.3d 923 (Sup. Ct. N.Y. County, 2023) ................................................................................................................................... 9

*Aguirre v Paul*, 54 AD3d 302 [2008] ...................................................................... 10

*Astrocom Electronics v. Lafayette Radio*, 63 A.D.2d 765, 766 (3d Dep't 1978) ...................... 13

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.Supp.2d 474 (S.D.N.Y. 2010) ......... 19
*Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, at 469 (2nd Cir. 1995) ................................. 9

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2nd Cir. 1996) ..... 15

*Cobalt Partners, L.P. v. GSC Cap. Corp.*, 97 A.D.3d 35, 40, 944 N.Y.S.2d 30, 33 (2012) ....... 11

*Cobalt Partners, L.P., supra. at 33-34, citing TNS Holdings v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 703 N.E.2d 749 (1998) ................................................................... 11
*Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 199 (S.D.N.Y.2006) ........... 18
*Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 191 at 203 (2018) ................................ 9

*Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) ................................................................................... 14

*England Strohl/Denigris, Inc. v. Weiner*, 538 F. Supp. 612, 615 (S.D.N.Y. 1982) ................... 13

*Great Earth International Franchising Co. v. Milks Development*, 311 F.Supp.2d 419 at 426-427 (S.D.N.Y. 2004) ......................................................................................................... 16

*Greenway Plaza Off. Park-1 v Metro Constr. Servs.*, 4 AD3d at 329-330) ............................... 10

*Guptill Holding Corp. v. State*, 33 A.D.2d 362, 365 (3d Dep't), aff'd, 31 N.Y.2d 897 (1970) ... 13

*Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 116 [2009] 10

*Holme v. Global Minerals & Metals Corp.*, 880 N.Y.S.2d 873 (Sup. Ct. N.Y. County, 2009) ..... 9

*IMG Fragrance Brands, LLC* 679 F. Supp. 2d 395 at 408–09 (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996) ....................................... 17
*Kubin v. Miller*, 801 F. Supp. 1101, 1118 (S.D.N.Y. 1992) ...................................................... 18

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, at 163 (1993) .............................................................................................................................. 9

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2nd Cir. 2015) .............................................. 12

*Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.*, No. 06-cv-4881 (FB)(CLP), at *2 (E.D.N.Y. Aug. 8, 2007) ...................................................................................................................... 13

*Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) ....... 11

*Matzan v. Eastman Kodak Company*, 134 A.D.2d 863 (4th Dept. 1987) ................................. 18

*Michaels v. Lispenard Holding Corp.*, 11 A.D.2d 12, 201 N.Y.S.2d 611 (1960) ........................ 10

*Mohegan Lake Motors, Inc.v.Maoli*, No. 16-CV-06717 (NSR), at*2–3 (S.D.N.Y. Dec. 7, 2017 ..................................................................................................................................... 10

*North Shore Architectural Stone, Inc. v. American Art is in Construction, Inc., 61 N.Y.S.3d 627 (2017 N.Y. App. Div. 2d)* ........................................................................................9

*Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1160–61 (S.D.N.Y. 1996) (citing E.g., Caniglia v. Chicago Tribune–New York News Syndicate, Inc., 204 A.D.2d 233, 234 (1st Dep't.1994)* ......................................................................................................14

*PDK Labs, Inc v G.M.G. Trans W. Corp., 101 AD3d at 973* ................................................10

*Puma Indus. Consulting, Inc. v. Daal Assocs., Inc., 808 F.2d 982, 986 (2d Cir. 1987) (citing In re Gibraltor Amusements, Ltd., 291 F.2d 22, 24–25 (2d Cir. 1961) (citations omitted)* ...........14

*Rajeev Sindhwani, M.D., PLLC v Coe Bus. Serv., Inc., 52 AD3d at 677* ................................10

*Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (citing Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 884 (1st Dep't 1982))* .............18

*Sabo v. Delman, 3 N.Y.2d 155 (1957)* ................................................................................17

*Silvercreek Mgmt., Inc. v. Citigroup, Inc., 248 F. Supp. 3d 428, 438 (S.D.N.Y. 2017)* .............12

*TNS Holdings v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 703 N.E.2d 749 (1998)* .............................................................................................................................11

*Triumph Advertising, 116 A.D.2d at 527, 497 N.Y.S.2d at 675* ............................................14

*Van Neil v. Berger, 219 A.D.2d 811, 811, 632 N.Y.S.2d 48, 48 (4th Dep't 1995) (memorandum)* ................................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff submits the instant Memorandum of Law in opposition to Defendant Daniel Yomtobian's Motion to Dismiss. The Court should deny the instant motion because Plaintiff's causes of action for conversion, fraud, and misrepresentation against Defendant Yomtobian are claims upon which relief may be granted. As discussed herein, Plaintiff's allegations involve business torts with specific reference to *the individual Defendants' own unlawful or tortious actions*, which occurred in the context of but necessarily outside the bounds of the underlying contracts at issue. It bears emphasis that the unlawful and tortious conduct at issue is personal to the Defendants, and involves intentional material misrepresentations made by the Defendants to Plaintiff and to non-party American Express which caused Plaintiff damages and unjustly enriched one or both of the Defendants personally and rendered Plaintiff's contractual counterparties, i.e., Defendants' closely held corporations, judgement proof. Simply stated, this case involves Defendants' own lies and sham corporations, which they used to damage Plaintiff.

Plaintiff Clean Energy Experts (CEE) brought this action on March 9, 2023, alleging causes of action for conversion, fraud, and misrepresentation against Defendants Nick Benhammou and Daniel Yomtobian. *See*, ECF # 2. This action arises from repeated fraudulent charge backs beginning in June 2022 and made from the Defendants' accounts against sales lead fees that CEE assessed. Plaintiff alleges economic damages in excess of $250,000.00.

Plaintiff's Complaint sets forth causes of action upon which this Court may grant relief. Indeed, and as set forth below, it is permissible and common to being causes in tort personally against parties who acted unlawfully under color of their corporate authority, if such unlawful actions constitute breach of a duty independent of the breach of contract. Indeed, the existence of corporate entity liability limitation does not protect a party, such as Defendants herein, from the

consequences of their own unlawful actions, including those involving conversion, fraud, and intentional misrepresentation. Should the Court find that Plaintiff's allegations are legally insufficient, which it should not, Plaintiff respectfully requests leave to file an amended complaint. Plaintiff has ample factual basis on which to do so, which basis is known to all parties herein and to the Court, and Defendants will suffer no prejudice therefrom. Moreover, given the existence of the Nassau County Action, referenced in the accompanying Declaration of Counsel, such leave will serve the interests of judicial comity. *See*, Declaration of Brendan T. Mahoney in Opposition to Defendant Yomtobian's Motion to Dismiss ("Mahoney Declaration"), **Exhibit A**.

## STATEMENT OF FACTS

As set forth in full detail in the Complaint this action arises from Defendants' misrepresentations made to their merchant services provider American Express, which caused American Express to charge back sales lead fees rightfully due and owing to Plaintiff CEE. This course of action resulted in a loss of over $250,000.00 to CEE. *See*, ECF # 2, at ¶ 26-33, 55 and 56. There is a related action, presently pending in the Supreme Court of the State of New York, County of Nassau under Index No. 616835/2022, which as discussed below illuminates the facts at issue in this matter, and to which counsel directs the Court's attention in the interest of judicial comity and economy. *See*, Mahoney Declaration, **Exhibit A**. Although Plaintiff presently lacks the benefit of any discovery in this matter, it has adduced the following facts concerning Defendants' torts at issue in this litigation:

1. In June 2022, Benhammou and Yomtobian began to repeatedly submit false chargeback requests to American Express Credit Card Company (*See* ECF # 2 at ¶3).

2. Benhammou and Yombtobian did not provide CEE with a reason for these chargeback requests, nor did they attempt to resolve any billing concerns with CEE. (*See,* ECF # 2 at ¶3.).

3. On or about June 28, 2022, Solar Program, either by or through Benhammou and/or Yomtobian, requested $11,000 in chargebacks from American Express for lead fees that CEE had permissibly charged Solar Program. (*See,* ECF # 2 at ¶26).

4. These chargeback requests were rejected by American Express as they related to legitimate charges for goods and services provided by CEE to Solar Program, per their contract. (*See,* ECF # 2 at ¶27).

5. Solar Program resubmitted the same chargeback request for $11,000, as well as multiple other chargeback requests, which totaled to $65,600; which were approved by American Express (*See,* ECF # 2 at ¶28).

6. Group Solar, either by or through Benhammou, acted in a similar fashion in submitting chargeback requests to American Express for legitimate lead fee charges that CEE had permissibly charged Group Solar, amounting to a total of $193,288.00. (*See,* ECF # 2 at ¶30-31).

7. Benhammou told CEE that he would take care of the $11,000 chargeback, and that "you guys deliver the leads so it shouldn't be any charges back anyway." *See,* ECF # 2 at ¶36).

8. When asked about additional chargeback requests, Benhammou told CEE that "We are 100% with you and those leads will be paid in full by [Solar Program] this is inadmissible what [he is] doing" (*See,* ECF # 2 at ¶39).

9. Benhammou placed the responsibility of the chargebacks from Solar Program onto Yomtobian (*See,* ECF # 2 at ¶41).

10. For "nearly the entirety of its existence, Benhammou alleges that Yombtobian used the Solar Program Bank Account as his "own personal piggybank" (*See,* Mahoney Declaration, **Exhibit A**, at ¶3).

11. Benhammou alleges that Yombtobian disputed valid charges on the Company's Credit card and refused to pay vendors and installers for the work they performed for the company (*See,* Mahoney Declaration, **Exhibit A**, at ¶3 and ¶20).

12. Benhammou alleges that Yombtobian cut off all of his access to the Company's bank accounts, credit cards, book and records (*See,* Mahoney Declaration, **Exhibit A**, at ¶5).

13. Benhammou alleges that Yomtobian used Solar Program's funds for personal expenses, such as a wig costing over one-thousand dollars for his wife (*See,* Mahoney Declaration, **Exhibit A**, at ¶19).

14. Benhammou alleges that in June and July 2022, Yombtobian removed all of his access to Solar Program's American Express account, as well as the company email system used to communicate with vendors, third parties, contractors, etc. (*See,* Mahoney Declaration, **Exhibit A**, at ¶24).

15. Benhammou alleges that the actions committed by Yomtobian (including the chargebacks for legitimate fees) were "wrongful and illegal" (*See,* Mahoney Declaration, **Exhibit A**, at ¶28 and ¶29).

It is incredibly important to note that both Plaintiff and Defendant Benhammou have identified June and July of 2022 as the time in which the tortious scheme at issue became apparent. Simply stated, Plaintiff is in possession of the factual granularity which underlies the allegations that it has made in this matter. Even at this early stage in the litigation, it is clear Defendant Yomtobian was not acting "in furtherance of corporate objectives" when he used the corporation as his personal bank account, nor was he merely committing a breach of contract by lying to American Express to induce them to charge back Plaintiff's account. Rather, Defendants, acting in concert or otherwise, were also not merely committing breach of contract when they indicated to Plaintiff that despite the charge backs, they would pay Plaintiff for the customer leads sold. *See*, ECF #2, at ¶¶36 and 39. Indeed, Defendants were committing fraud, conversion, and intentional misrepresentation. It is black letter law that these claims asserted for conversion, fraud, and intentional misrepresentation are individual claims, specifically being intentional torts that do not require a contract to proceed and which may be brought despite occurring in the context of a contract breach. These claims asserted have a sound basis and developed foundation in the factual record which presently exists. Accordingly, Defendant Yomtobian's Motion to Dismiss should be denied.

## **ARGUMENT**

1. **The Motion to Dismiss Standard disfavors granting Defendant Yomtobian's Motion, particularly before discovery.**

When considering a Rule 12(b)(6) Motion to Dismiss, the Court must accept all factual allegations in the Complaint as true, and must draw all reasonable inferences in favor of Plaintiff. *See*, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, at 163 (1993), *and* Bolt Elec., Inc. v. City of New York, 53 F.3d 465, at 469 (2nd Cir. 1995). Further, it is well established that New York courts disfavor disposition of a veil piercing claim prior to discovery on a pre-answer or pre-discovery Motion to Dismiss. Specifically, New York Appellate courts have held that "a fact-laden claim to pierce the corporate veil is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." 245 E. 19 Realty LLC v. 245 E. 19th St. Parking LLC, 194 N.Y.S.3d 923 (Sup. Ct. N.Y. County, 2023), *citing* Cortlandt St. Recovery Corp. v. Bonderman, 31 N.Y.3d 191 at 203 (2018). *See also*, Holme v. Global Minerals & Metals Corp., 880 N.Y.S.2d 873 (Sup. Ct. N.Y. County, 2009). Plaintiff's allegations concerning the Defendants' fraud, conversion, and intentional misrepresentation are by their legal nature fact laden, and indeed Plaintiff has presented to the Court and parties the discrete facts presently known to it. Discovery will inevitably bear out further facts bearing on these claims, and it would be unjust to Plaintiff to prematurely foreclose Plaintiff's rights at this juncture. Plaintiff has met its initial burden, is entitled to proceed with discovery in this matter, and so the instant motion must be denied.

2.  **It is permissible and common for personal business tort claims to arise in the context of a contract with a corporate entity, and Plaintiff is entitled to bring such claims in this case.**

New York case law analyzing instances where such independent allegations of unlawful conduct are made in addition to mere breach of contract supports Plaintiff's position. Indeed, business torts such as fraud, intentional misrepresentation, and conversion, often arise in conjunction with a breach of contract, but those torts alone may be alternative causes of action. For example, in North Shore Architectural Stone, Inc., the Appellate Division Second Department

found that the corporate officer of a limestone company knowingly lied about the delivery of a product to a party to induce the plaintiff to pay for the product before it had been delivered. North Shore Architectural Stone, Inc. v. American Art is in Construction, Inc., 61 N.Y.S.3d 627 (2017 N.Y. App. Div. 2d). The court found that the case before it involved more than a mere breach of contract for failing to deliver a product on time, and held in that case that the defendant personally participated in making the misrepresentation on behalf of the corporation and therefore could not avoid liability simply because he was doing this in his capacity as a corporate officer. Id. at 629. The Second Department in North Shore was clear in finding that while Defendant's alleged conduct may have been committed "on behalf of the corporation in the course of official duties", it did not prevent liability from being imposed upon him. Id., citing Rajeev Sindhwani, M.D., PLLC v Coe Bus. Serv., Inc., 52 AD3d at 677; see PDK Labs, Inc. v G.M.G. Trans W. Corp., 101 AD3d at 973; Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp., 64 AD3d 85, 116 [2009]; Aguirre v Paul, 54 AD3d 302 [2008]; Greenway Plaza Off. Park-1 v Metro Constr. Servs., 4 AD3d at 329-330). "Corporate officers or agents are personally liable for those torts they personally commit, or which they inspire or participate in, even though performed by an artificial body." Michaels v. Lispenard Holding Corp., 11 A.D.2d 12, 201 N.Y.S.2d 611 (1960).

Defendant Yomtobian's argument that no action for fraud may stand if the only fraud charged relates to breach of contract is inapplicable to this case. See, Mohegan Lake Motors, Inc. v. Maoli, No. 16-CV-06717 (NSR), at *2–3 (S.D.N.Y. Dec. 7, 2017) (Defendant Yomtobian cites this unreported trial court decision for the proposition that "[N]o action for fraud [can] stand [] where the only fraud charge relates to breach of contract."). Plaintiff claims, however, fit within a well-established exception to this rule, as discussed below. Indeed, Plaintiff has alleged, however, that the Defendants abused their corporations' forms and intentionally lied to both

Plaintiff and non-party American Express to wrongly obtain charge backs to Plaintiff's detriment, and the facts presently known support these allegations.

3. **Plaintiff is entitled to pierce the corporate veil in this case, involving Defendants' closely held entities that Defendants used to effectuate their fraudulent scheme, and at a minimum Plaintiff is entitled to proceed with discovery in the case at bar.**

Plaintiff has alleged that the Defendants, including Mr. Yomtobian, dominated their closely held corporations in abuse of the corporate form, and in doing so perpetrated torts, including fraud, conversion, and intentional misrepresentation upon Plaintiff, which resulted in Plaintiff's damages. While New York Courts appropriately disfavor disregard of the corporate form, veil piercing is permissible where Plaintiff shows that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Cobalt Partners, L.P. v. GSC Cap. Corp., 97 A.D.3d 35, 40, 944 N.Y.S.2d 30, 33 (2012), *citing* Matter of Morris v. New York State Dept. of Taxation & Fin., 82 N.Y.2d 135, 141 (1993). Cobalt further explains that "Those seeking to pierce a corporate veil, of course, bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences. *Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance* [emphasis added; citations omitted]". Cobalt Partners, L.P., *supra.* at 33-34, *citing* TNS Holdings v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 703 N.E.2d 749 (1998)). It is respectfully submitted that Plaintiff's allegations, and the evidence Plaintiff has been able to adduce so far without the aid of discovery, meets this burden. Specifically, as set forth in the Complaint and its exhibits, as well as Mr. Benhammou's allegations in the related Nassau County action, it has been shown that, at a minimum, Mr. Yomtobian used his domination of the corporate

form to commit tortious acts, to wit fraud, conversion, and intentional misrepresentation, against Plaintiff, which acts caused Plaintiff's damages. Defendant Yomtobian cannot come before the court having unclean hands from inflicting this inequity, fraud, and malfeasance upon Plaintiff, seeking dismissal on inapposite legal technicalities that, Plaintiff respectfully submits, are themselves insufficient to obtain a dismissal.

**4.** **Plaintiff has plead particular facts, so far uncontroverted, regarding Defendants' acts in furtherance of the alleged fraud, conversion, and intentional misrepresentation, entitling it to proceed with this litigation.**

Defendant Yomtobian cites several authorities for the proposition that Plaintiff is not entitled in this action to pierce the corporate veil. Mr. Yomtobian's reliance on these cases is misplaced, however, and if anything they support Plaintiff's position that it is entitled to proceed personally against Defendants in this action as alleged. For example, Defendant cites <u>Silvercreek</u> for the proposition that a Plaintiff may not satisfy fraud pleading requirements with reliance on speculation and conclusory allegations. *See,* <u>Silvercreek Mgmt., Inc. v. Citigroup, Inc.</u>, 248 F. Supp. 3d 428, 438 (S.D.N.Y. 2017): <u>Silvercreek</u> acknowledges, however that a "plaintiff may establish a strong inference of scienter, among other ways, by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " <u>Id</u>. at 177 (*quoting* <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2nd Cir. 2015)). As noted above, in the Complaint, the exhibits thereto, and the Mahoney Declaration and its **Exhibit A**, there are ample facts directly supporting Plaintiff's allegations of fraud, conversion, and intentional misrepresentation aimed at Defendants, as well as indirectly supporting those allegations by inference. These facts establish that beginning in June of 2022, Defendant Yomtobian used his domination and control of the corporate entities at issue to cause American Express to wrongly charge back the Plaintiff's accounts.

Defendant's reliance on <u>Liberty Mutual</u> is similarly misplaced, and counsel cannot locate anywhere in the cited trial court opinion the quote which Defendant apparently found in that authority. *See*, <u>Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.</u>, No. 06-cv-4881 (FB)(CLP), at *2 (E.D.N.Y. Aug. 8, 2007) (citations omitted) (Defense counsel seems to be misquoting this case. The quote, "[t]he New York courts are very reluctant to disregard the corporate entity" does not appear anywhere in the body of the decision on Westlaw.). In fact, the court in <u>Liberty Mutual</u> found that plaintiff could pierce the corporate veil. *See*, <u>Id</u>. Defendant is well aware of the factual particulars underlying Plaintiff's claims herein, having received both Plaintiff's complaint and its extensive exhibits, as well as the complaint in the related Nassau County action. Defendant Yomtobian cannot hide his unclean hands by asserting that Plaintiff has yet to sufficiently establish the factual basis of its causes of action prior to discovery.

Similarly, Defendant Yomtobian's reliance on <u>England Strohl/Denigris, Inc.</u> is misplaced; that case supports Plaintiff's position that Plaintiff is entitled to proceed personally against Defendants, because Defendants used their corporate forms as a shell from which they unlawfully extracted personal enrichment to Plaintiff's detriment. *See*, <u>England Strohl/Denigris, Inc. v. Weiner</u>, 538 F. Supp. 612, 615 (S.D.N.Y. 1982): (The Court here also explains "[i]t is clear that to pierce the corporate veil, and thus incur the personal liability of its officers, the corporate form must be found to be nothing more than a mere shell dominated and controlled by the individuals to carry on their own personal business." <u>Id</u>. at 614, *citing* <u>Astrocom Electronics v. Lafayette Radio</u>, 63 A.D.2d 765, 766 (3d Dep't 1978); <u>Guptill Holding Corp. v. State</u>, 33 A.D.2d 362, 365 (3d Dep't), aff'd, 31 N.Y.2d 897 (1970). It has never been alleged and no facts support the conclusion that Defendants' actions underlying this dispute were taken for legitimate corporate purposes, for example, to preserve the assets of a struggling corporate entity. Indeed, Defendants

unlawfully used their corporate entities as an artifice and as a means by which to obtain personal enrichment. Therefore, Plaintiff's causes of action must, at least at this juncture, be allowed to stand.[1]

> **5.  Plaintiff's fraud claim is viable given that Defendants breached a duty to Plaintiff extraneous to the Contract, made fraudulent misrepresentations, including of present facts, to Plaintiff and non-party American Express collateral and extraneous to the Contracts at issue, and in so making such misrepresentations along with unlawfully rendering the corporate entities insolvent caused Plaintiff special damages unrecoverable as contract damages.**

Plaintiff's fraud claim fits within multiple exceptions to the general prohibition under New York law that a fraud claim may not proceed as duplicative of a contract claim. The <u>Bridgestone</u> case articulates these exceptions to the general prohibition of such claims thoroughly, stating: "to maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, *see Van Neil v. Berger,* 219 A.D.2d 811, 811, 632 N.Y.S.2d 48, 48 (4th Dep't 1995) (memorandum); *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases); or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, *see Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986) (memorandum) (refusing to dismiss fraud claim alleging "a misrepresentation of present fact, not of future intent" which misrepresentation was "collateral to, but which was the inducement for the contract" and thus not duplicative of contract claim) (citations and internal quotation marks omitted); *Triumph Advertising,* 116 A.D.2d at 527, 497 N.Y.S.2d at 675, *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases); or (iii) seek

---

[1] Similarly, Defendant Yomtobian cites the <u>Puma Indus.</u> case for the proposition that corporate officers cannot be held liable for the acts of a corporation. While such is black letter law, Plaintiff's citation dehors the fact that in this case Defendant Yomtobian acted *ultra vires* in his corporate capacity and indeed used the corporate entity to unlawfully enrich himself. *See,* <u>Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.,</u> 808 F.2d 982, 986 (2d Cir. 1987) (*citing* <u>In re Gibraltor Amusements, Ltd.,</u> 291 F.2d 22, 24–25 (2d Cir. 1961).

special damages that are caused by the misrepresentation and unrecoverable as contract damages, *see Deerfield,* 68 N.Y.2d at 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003; *Triumph Advertising,* 116 A.D.2d at 527–28, 497 N.Y.S.2d at 675; *see also Papa's–June Music,* 921 F.Supp. at 1161 (citing cases). <u>Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,</u> 98 F.3d 13 (2nd Cir. 1996). First, Plaintiff has here shown that Defendants breached obligations to Plaintiff collateral or extraneous to the contracts at issue; specifically, Defendants had a duty to not misrepresent present facts so to both avoid paying what was owed under the contract and induce Plaintiff to continue to perform under the contract.

Instead, Defendant Yomtobian used the corporate form as his own personal piggy bank, and Defendant Benhammou repeatedly assured Plaintiff that the lead fees would be paid. *See,* Mahoney Declaration, **Exhibit A**, *inter alia,* at ¶3, 5, 19, and 20. Second, Defendants made misrepresentations collateral and extraneous to the contracts at issue; specifically, Defendants made misrepresentations to American Express concerning the charge backs at issue, and while doing so made misrepresentations to Plaintiff that the charge backs should not have occurred and would be resolved. See, ECF #2 at ¶ 36 and 39. Finally, the very reason Plaintiff is proceeding against Defendants personally in this forum is because Plaintiff is entitled to special damages unrecoverable under the contract. Such normal, contractual damages are unrecoverable expressly because of Defendants' unlawful malfeasance, i.e. using the funds of closely held corporations at issue to pay for personal expenses, which resulted in leaving the corporate entities at issue insolvent and judgment proof.

It is especially important that the misrepresentations at issue were misrepresentations of present facts collateral and extraneous to the contract. In <u>Great Earth International Franchising Co.</u>, the court stated that "[t]he issue in the second exception is whether the alleged fraudulent

representations should be considered collateral or extraneous to the contract, and as a matter of both logic and law, the primary consideration here is whether the contract speaks to the issue. Great Earth International Franchising Co. v. Milks Development, 311 F.Supp.2d 419 at 426-427 (S.D.N.Y. 2004) (*internal citations omitted*). To be sure, under the Lead Purchase Agreement Defendants agreed not to initiate a charge back without first exhausting attempts to resolve the dispute with Plaintiff. *See, e.g.*, ECF #2, **Exhibit C**. The contract did not speak to nor contemplate a situation where one or both of the Defendants would make material misstatements to American Express to induce them to issue a charge back and make material misstatements of present facts to Plaintiff that the charge back issues would be resolved and Plaintiff would be paid, all while draining the corporate coffers of funds to pay personal expenses.

It would have been a different matter entirely if Defendants through their corporate entities had merely indicated to Plaintiff that they were unsatisfied with the continued business relationship for whatever reason and repudiated the contracts at issue. Instead, Defendants made intentional misrepresentations to American Express to assure that charge backs would issue in favor of their corporations, and intentional misrepresentations to Plaintiff to assure Plaintiff that the charge back issues would be resolved. These false statements of present facts made to Plaintiff induced Plaintiff to proceed in a course of dealing with the Defendants' corporations, and are indeed what entitles Plaintiff to proceed on its cause of action for fraud. *See*, Id. at 427-428 (finding that "an intention not to perform under a contract is no different from the commonly presumed intention either to perform or to pay damages for breach of contract, and should be penalized no more extensively. By contrast, a misrepresentation of present fact...might give rise to a claim of fraudulent inducement.").

In this case, Plaintiffs' damages also arise from Defendants' fraudulent conduct, and by this fraudulent course are unrecoverable as contract damages. Thus, Plaintiff may avail itself of the third exception to the general prohibition against bringing a cause of action for fraud in a case stemming from breach of contract. *See*, Id., at 429-430 (finding that to satisfy this exception, "[d]efendants' damages must have been caused by the misrepresentation and unrecoverable as contract damages," and "[t]he injury must not only exist, it must flow directly and proximately from the fraud, rather than the breach of contract."). Again, had Defendants through their corporate entities merely repudiated the contracts at issue, Plaintiff's damages would have been insubstantial and possibly only nominal. In such a scenario, the course of dealing between the parties would have ceased, Plaintiff would have stopped furnishing sales leads, and Defendants through their corporations' American Express accounts would have stopped paying Plaintiff. Instead, Defendants lied to Plaintiff about their corporations' intentions to continue to perform under the Lead Sales Agreements, while lying to non-party American Express about the leads furnished under those agreements. Such a course of misrepresentations caused the course of dealing to continue, to Plaintiff's detriment and causing Plaintiff greatly magnified damages over that which Plaintiff would have suffered under a mere repudiation of the contracts. It is well established that an action for fraud may lie where a promise is made with "a preconceived and undisclosed intention of not performing it, [because] it constitutes a misrepresentation of a material existing fact." *See*, Sabo v. Delman, 3 N.Y.2d 155 (1957).[2]

6. **Plaintiff's claims for conversion and intentional misrepresentation must also stand, as they are based on Defendants' intentional, tortious conduct which is necessarily extra-contractual, causing Plaintiff damages which Plaintiff**

---

[2] Defendant's citation to IMG Fragrance is unpersuasive, as that case dealt with fraudulent concealment, which requires a fiduciary relationship. *See*, IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F.Supp.2d 395 at 408-410 (S.D.N.Y. 2009). Moreover, Plaintiff cannot speak to Defendant's citation to "Maxim Grp. LLC," as there is no proper citation to that case in Defendant's brief, and counsel cannot locate that authority on Westlaw.

**would not have suffered if there had merely been a breach of the Lead Sales Agreements.**

Plaintiff agrees that an action for conversion may not lie for mere non-performance of a contract. Such a bare allegation, however, has not been made in this case.[3] Plaintiff has pled specific facts concerning Defendant's unlawful conduct, which conduct was totally outside the bounds of the contracts at issue, and which conduct supports claims against Defendants for conversion, fraud, and intentional misrepresentation. In that regard, the Kubin case supports Plaintiff's position. *See*, Kubin v. Miller, 801 F. Supp. 1101, 1118 (S.D.N.Y. 1992), *citing*, Matzan v. Eastman Kodak Company, 134 A.D.2d 863 (4th Dept. 1987). Specifically, Kubin states that an action for conversion may not lie for simple nonperformance under an alleged agreement unless the plaintiff sets forth additional allegations of wrongdoing. Id. In Kubin, the court found that Plaintiff's conversion claim was independent of his contract claim, in that Plaintiff alleged that "the defendant has diverted and continues to divert business, assets, and profits from CMI to himself and to other entities he owns or controls. This allegation is distinct from Kubin's contention that defendant failed to perform the alleged agreements." Id. As set forth extensively above, Plaintiff has alleged extra contractual wrongdoing on the part of Defendants, including material misrepresentations made to Plaintiff, which induced Plaintiff to continue to provide sales leads for which Plaintiff was never paid, as well as intentional material misrepresentations to American Express, resulting in Defendants' theft of over $250,000 of sales leads from Plaintiff;

---

[3] Given that Plaintiff has alleged wrongdoing beyond mere breach of contract, it is respectfully submitted that Defendant Yomtobian's citations to Rolls-Royce and Command Cinema are unpersuasive. *See*, Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (*citing* Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 884 (1st Dep't 1982), and finding that no claim for conversion may lie where damages are merely being sought for a break of contract), Command Cinema Corp. v. VCA Labs, Inc., 464 F.Supp.2d 191, 199 (S.D.N.Y.2006) "There is no conversion action under New York law where damages are sought for breach of contract; rather, a plaintiff must show acts that were unlawful or wrongful as opposed to violations of contractual rights.").

finally, on information and belief, Defendants unlawfully drained their corporations of cash to further their own personal expenses, rendering those entities judgment proof.[4]

New York law subjects Plaintiff's Intentional Misrepresentation count to the same pleading requirements as Plaintiff's fraud count, and so its count for Intentional Misrepresentation must also rise or fall upon a determination that Defendants engaged in some unlawful conduct beyond mere breach of contract. *See*, B & M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F.Supp.2d 474 (S.D.N.Y. 2010). It is respectfully submitted that even at this early stage and without the benefit if discovery, Plaintiff has satisfied this burden.

## CONCLUSION

The gravamen of Plaintiff's Complaint is that the Defendants engaged in a course of unlawful conduct that caused Plaintiff damages, and that such a course of conduct was necessarily outside the bounds of the contracts at issue and indeed beyond the scope of their corporate capacities. Plaintiff is at a decided disadvantage in offering facts in support of its allegations at this early juncture and without the benefit of discovery, and accordingly the law disfavors a dispositive determination at this time. Nevertheless, there is ample evidence that Defendant Yomtobian abused the corporate form for his own pecuniary gain, and that Defendants made material misrepresentations of present facts to both Plaintiff and non-party American Express in furtherance of their unlawful scheme. Defendants are not prejudiced by Plaintiff's pleadings at this stage, as the facts of their scheme are certainly known unto one or both of the Defendants. Moreover, judicial comity requires that Plaintiff's claims be heard, given the pendency of the related action in the Supreme Court of the State of New York, County of Nassau. Finally, it is

---

[4] Plaintiff is admittedly painting with a broad brush, imputing actions to both defendants, as Plaintiff is without the benefit of any discovery. It may well come to light in the course of this litigation that either Benhammou or Yomtobian are entirely without blame in this action, but discovery is required to come to such a conclusion, if same is even justified.

respectfully submitted that if the Court dismisses the instant action, which it should not, that the Court does so without prejudice and with leave for Plaintiff to file an Amended Complaint alleging further factual particularity which it now knows given the June 29, 2023 Complaint filed in the Nassau County action.

Gordon Rees Scully Mansukhani, LLP

By: _____

Brendan T. Mahoney, Esq
One Battery Park Plaza, 28th Floor
New York, NY 10004
Phone: (860) 494-7489
bmahoney@grsm.com
*Attorneys for Plaintiff*
CLEAN ENERGY EXPERTS

Dated: New York, New York
      October 20, 2023

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 20, 2023, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which served a copy of the foregoing on all counsel of record.

*s/ Brendan T. Mahoney*