UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLEAN ENERGY EXPERTS,<br>      Plaintiff(s),<br>v.<br>NICK BENHAMMOU, et al.,<br>      Defendant(s). | 23-CV-1940 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

In this action, Plaintiff Clean Energy Experts ("CEE") asserts common law conversion, fraud, and intentional misrepresentation claims against Defendants Nick Benhammou[1] and Daniel Yomtobian. Plaintiff sells solar energy-related customer leads, including to two entities allegedly controlled by Defendants. In substance, Plaintiff alleges that Defendants placed a series of fraudulent chargeback requests with American Express related to customer leads that Plaintiff had actually provided to those businesses. Plaintiff initiated arbitration with the businesses related to the chargebacks; Defendants refused to participate in the arbitration in their personal capacity. *See* Decl. of Brendan T. Mahoney ¶ 9, ECF No. 39. This lawsuit followed.

Benhammou moves to dismiss the Complaint and Yomtobian moves for judgment on the pleadings. *See* Am. Mot. to Dismiss Compl., ECF No. 28; Mot. for J. on the Pleadings, ECF No. 45. For the reasons given below, the motions are GRANTED.

---

[1] In his notice of appearance and in the memorandum of law in support of Benhammou's motion to dismiss, but not in his reply, Benhammou's counsel uses the spelling "Benhamou." For the sake of consistency, this Opinion and Order adopts the spelling "Benhammou," which the parties generally use in their filings, including the Complaint.

**BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true solely for purposes of adjudicating Defendants' motions. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[2]

CEE is a California corporation that sells customer leads to businesses. Compl. ¶¶ 8, 13, ECF No. 1. Two such businesses are Group Solar USA and Solar Program, entities controlled by Defendants at all relevant times. *Id.* ¶¶ 2, 16-17. Pursuant to Lead Purchase Agreements between CEE and each entity, the companies would pay Plaintiff in exchange for leads relevant to products and services the companies offer. *Id.* ¶¶ 20-21.

On or around June 28, 2022, Solar Program, through or at the direction of Defendants, requested chargebacks from its credit card company, American Express, for fees paid to Plaintiff. *Id.* ¶ 26. American Express initially rejected the chargebacks, because the charges were legitimate and the leads had been provided to Solar Program. *Id.* ¶ 27. Solar Program resubmitted the same chargeback requests, as well as additional ones, which American Express eventually approved. *Id.* ¶ 28. Subsequently, Group Solar did the same: through or at the direction of Benhammou, it submitted false chargebacks to American Express for fees for services provided by Plaintiff, and American Express approved these chargebacks as well. *Id.* ¶¶ 30-31. Solar Program, Group Solar, and Defendants have not provided Plaintiff any reason for the chargeback requests and have never attempted to resolve the matter directly through Plaintiff, as required under the Lead Purchase Agreements. *Id.* ¶¶ 33-34.

---

[2] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

During its investigation of the false chargebacks, Plaintiff prevented Solar Program and Group Solar from continuing to purchase leads. *Id.* ¶ 47. In response, companies affiliated with Defendants—e.g., one owned by the Daniel Yomtobian Corporation, and one which shares personnel and an address with Group Solar—signed up for accounts with Plaintiff and began purchasing leads. *Id.* ¶¶ 48, 50. Plaintiff then froze these accounts. *Id.* ¶¶ 49, 51. In total, Group Solar and Solar Program owe Plaintiff $247,613 for unpaid fees related to customer leads. *Id.* ¶¶ 55-56.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Investment Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

## DISCUSSION

Defendants' motions are granted. While Plaintiff's allegations might, in theory, support a claim for breach of contract, they do not support the claims alleged in the Complaint. The fraud and intentional misrepresentation claims against Yomtobian and Benhammou are dismissed because, as pleaded in the Complaint, they concern matters that are not extraneous to the

3

agreements between Plaintiff and Group Solar and Solar Program.  Similarly, the conversion claims are dismissed because they allege Plaintiff's interest in funds covered by the subject matter of those agreements.

A.      **Fraud Claims**

Under New York law,[3] "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Carlson v. Am. Intern. Grp., Inc.*, 89 N.E.3d 490, 503-04 (N.Y. 2017).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  To comply with the federal pleading standard, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023).

The fraud claims (Counts Three and Four) are dismissed.  The essence of the fraud claims as currently pleaded is that Defendants, through Solar Program and Group Solar, intentionally misrepresented to Plaintiff that they would pay for the solar leads provided to them, and that Plaintiff justifiably relied on this representation.  *See* Compl., ¶¶ 77-81, 86-90.  However, the Complaint also alleges that "[u]nder the terms of both Agreements, CEE provided Defendants with leads . . . [and] [i]n exchange for those leads, Defendants were required to pay CEE the applicable Lead Price."  *Id.* ¶¶ 20-21.  The Complaint therefore alleges "little more than intentionally-false statements . . . indicating [Defendants'] intent to perform under the contract."

---

[3] The parties cite New York cases and federal cases applying New York law in their memoranda of law; such consent is sufficient to establish the choice of law. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) ("The parties' briefs assume that Connecticut state law governs this case, and such implied consent is sufficient to establish the applicable choice of law.").

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (applying New York law).

In such circumstances, a plaintiff may still maintain a claim for fraud if it "demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract." *Id.* at 20. Each of the Defendants' alleged "misrepresentations that he would pay for the solar leads that CEE sold him," Compl. ¶¶ 77, 86, is not extraneous to the contract, because the contract speaks to the precise issue. The contracts specifically contemplate chargebacks, clarifying that "initiating a chargeback does not extinguish your obligation to pay" and obligating Group Solar and Solar Program to "exhaust[] all attempts to resolve any disputes directly with the Company." Compl. Ex. C ¶ 8, ECF No. 1-3; Compl. Ex. D ¶ 8, ECF No. 1-4. The alleged misrepresentations are covered by the contracts at issue; thus, while Plaintiff's allegations might support a breach of contract claim, they cannot support a fraud claim.

Plaintiff's arguments to the contrary fail. First, Plaintiff argues that the contract did not contemplate Defendants making misstatements that the chargeback issues would be resolved. *See* Memo. of L. in Opp'n to Yomtobian Mot. to Dismiss 16, ECF No. 53 ("Opp'n to Yomtobian"). This is irrelevant, because as pleaded in the Complaint, the fraud claims rest on Defendants' "misrepresent[ations] that [they] would pay for the solar leads that CEE sold [them]." Compl. ¶¶ 77, 86. Plaintiff also argues that the statements at issue are false statements of present fact that induced Plaintiff to continue dealing with Defendants. *See* Opp'n to Yomtobian 16. Even accepting this framing, the present fact that was allegedly misrepresented was Defendants' intention to perform—a matter not extraneous to the contractual relationship. *See Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*, 166 N.Y.S.3d 534, 534-35 (1st Dep't 2022) ("[E]ven though the alleged misstatements and omissions related to matters of

5

present fact, the matters in question were not collateral to the purchase agreement but were within the scope of the parties' rights and obligations under the terms of the purchase agreement.").

Finally, Plaintiff argues that the Complaint seeks special damages that would be unavailable in a contract action, due to Defendants rendering Solar Program and Group Solar judgment-proof. *See Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (allowing a fraud claim in the context of a contractual relationship when a plaintiff "seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages"). This argument fails because even if damages would be difficult to collect, the damages sought are unpaid fees for solar customer leads provided to Defendants, matters central to the contract. The claims alleging fraud (Counts Three and Four) are dismissed.

## B.  Intentional Misrepresentation Claims

The intentional misrepresentation claims (Counts Five and Six) are dismissed. Courts applying New York law have found intentional misrepresentation and fraud claims to be duplicative. *See Chen v. United States*, 854 F.2d 622, 628 (2d Cir. 1988) ('These allegations clearly constitute an action for intentional misrepresentation (called 'fraud' in New York), which requires that defendant, knowingly and with the intent to deceive, make a false representation upon which the plaintiff reasonably relies to his detriment."); *Sabre Intern. Sec., Ltd. v. Vulcan Capital Management, Inc.*, 944 N.Y.S.2d 36, 42 (1st Dep't 2012) ("To the extent plaintiff alleges intentional misrepresentation, the claim is duplicative of the sixth cause of action for fraud."); *360 N. Rodeo Drive LP v. Wells Fargo Bank, Nat'l Ass'n*, No. 22 Civ. 767, 2023 WL 2574180, at *8 (S.D.N.Y. Mar. 20, 2023) ("Under New York law, a claim for intentional misrepresentation

is identical to a claim for fraud."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020) (finding those claims "share the same elements").

As with fraud claims, district courts in this Circuit have dismissed intentional misrepresentation claims when they allege misrepresentations that are not collateral or extraneous to the contract. *See, e.g.*, *Aretakis v. Caesars Entertainment*, No. 16 Civ. 8751, 2018 WL 1069450, at *11 (S.D.N.Y. Feb. 23, 2018) (treating fraud and intentional misrepresentation claims as one cause of action, and dismissing it as duplicative because it alleged no misrepresentation outside of the contractual relationship); *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 420-21 (E.D.N.Y. 2013) (dismissing intentional misrepresentation claim because "the alleged misrepresentation . . . was not 'collateral or extraneous' to the forbearance agreements but, instead, goes to the heart of the contracts between the parties"). The intentional misrepresentation claims allege Defendants "misrepresented that [they] would pay for the solar leads that CEE sold [them]." Compl. ¶¶ 95, 104. Thus, for the same reasons that the claims asserting fraud fail, so do the claims alleging intentional misrepresentation.

C.   **Conversion Claims**

To allege a claim for conversion under New York law, a plaintiff must show "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 982 N.E.2d 576, 580 (N.Y. 2012).

The conversion claims (Counts One and Two) are dismissed because they, like the fraud and intentional misrepresentation claims, plead claims that are contractual in nature. "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud,

conversion, and other torts are generally precluded, unless based on a duty independent of the contract." *Novick v. AXA Network, LLC*, 714 F. App'x 22, 24 (2d Cir. 2017). The conversion claims allege Defendants initiated chargeback requests "for funds that [they] initially paid CEE for solar leads." Compl. ¶¶ 60, 67. As discussed, the contracts between Group Solar and Solar Program cover the solar lead fees. The conversion claims are dismissed, because "[a] claim of conversion under New York law cannot be predicated on a mere breach of contract." *Rynasko v. New York Univ.*, 63 F.4th 186, 196 (2d Cir. 2023).

Plaintiff's arguments to the contrary fail. It argues that Defendants made misrepresentations to Plaintiff "which induced Plaintiff to continue to provide sales leads for which Plaintiff was never paid" and misrepresentations to American Express to receive its proffered funds back. Opp'n to Yomtobian 18. These are squarely contractual: the former describes a promise to perform and the latter a statement to a third-party seeking to prevent (or undo) Defendants' performance. Plaintiff also argues that Defendants unlawfully rendered Solar Program and Group Solar judgment proof. *Id.* at 19. This is irrelevant to the pending motions. While Plaintiffs' assertion tends to support veil piercing against those entities for any liability they may incur, it does not create a duty independent of contract so as to support a conversion claim. The conversion claims are dismissed.

## CONCLUSION

For the reasons given above, Defendant Benhammou's motion to dismiss is **GRANTED**. Defendant Yomtobian's motion for judgment on the pleadings is construed as a motion to dismiss and **GRANTED**.

In a letter filed September 22, 2023, Plaintiff stated "that it stands on its pleadings" and would not amend the Complaint in response to Yomtobian's motion. *See* ECF No. 44. In a

conference held on December 20, 2023, Plaintiff restated that it did not think it had a basis to plead a breach of contract claim against Defendants.  As such, leave to amend the Complaint is **DENIED**.  Plaintiff is directed to the arbitral forum to pursue its claims related to the chargebacks at issue.

The Clerk of Court is respectfully directed to close the motions at ECF Nos. 28 and 45 and to terminate the case.

SO ORDERED.

Dated: January 18, 2024
       New York, New York

DALE E. HO
United States District Judge